UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  4:23 CR 82-4 RLW (JMB) ) |
| NELSON OYUELA-NUNEZ, | ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is a Motion to Dismiss filed on behalf of Defendant Nelson Oyuela-Nunez.  [ECF No. 90]  Defendant asks the Court to dismiss the Indictment against him with prejudice.  The government filed a response in opposition, seeking leave to dismiss the relevant charges without prejudice.  [ECF No. 100]

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

The procedural history of this case is somewhat complicated but critical to resolving the pending motion.[2]

Defendant is one of four people charged in three-count indictment alleging drug trafficking offenses.  Defendant is charged in Count I (conspiracy in violation of 21 U.S.C. § 846) and Count III (distributing fentanyl in violation of 21 U.S.C. § 841).  Defendant was arrested on March 2,

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

[2] The history recounted herein comprises information taken from the Electronic Case File record as well as information provided by the lawyers at a hearing before the undersigned on November 22, 2023.

2023, and had his initial appearance and arraignment before the Honorable Shirley P. Mensah, Chief U.S. Magistrate Judge. The Court appointed CJA counsel Jeffrey Goldfarb to represent Defendant and Mr. Goldfarb was present for the initial appearance and arraignment. The government was represented by Assistant United States Attorney ("AUSA") Ricardo Dixon.

The government moved for pretrial detention. Accordingly, after the initial appearance and arraignment, Judge Mensah conducted a contested detention hearing and took the matter under submission pending the receipt of a Bail Report from Pretrial Services. The Bail Report was filed on March 6, 2023. As relevant herein, the Bail Report reflected that Defendant was a citizen of Honduras who unlawfully entered the United States approximately eight years prior. He was living in the St. Louis, MO, area with his girlfriend and two children. His mother and two siblings also live in the St. Louis area.

On March 7, 2023, March Judge Mensah overruled the government's detention motion. Judge Mensah acknowledged Defendant's connection to Honduras, but also considered that he has lived in the United States since the age of twelve. Significantly, Pretrial Services reported to Judge Mensah that the Immigration and Customs Enforcement ("ICE") Agency had confirmed in writing that they did not intend to issue a detainer or warrant for Defendant before his federal case was resolved. [See ECF No. 35 at 6] In consideration of all other relevant facts and circumstances, Judge Mensah concluded that there were conditions of release that would reasonably ensure Defendant's appearance and the safety of the community.

On March 8, 2023, Judge Mensah held a bond hearing. Defendant, Mr. Goldfarb, and AUSA Dixon were present. Defendant executed an appearance bond and signed an order acknowledging his conditions of release.

Defendant was not released as expected following the bond hearing. Instead, and

2

unbeknownst to the Court or parties, ICE took Defendant into custody for removal. On March 23, 2023, after he learned of this unexpected circumstance, AUSA Dixon filed a motion to revoke Defendant's bond to ensure Defendant's presence for trial. [See ECF No. 40]  In that motion, AUSA Dixon reported that an Immigration Judge in Kansas City had already ordered Defendant's removal to Honduras. Judge Mensah set a hearing for April 4, 2023, and AUSA Dixon obtained a Writ of Habeas Corpus Ad Prosequendum to secure Defendant's presence for the April 4th hearing. [See ECF No. 46]  Defendant was not produced for the April 4th hearing, so the hearing was continued to April 11, 2023. [See ECF No. 48]  AUSA Dixon again obtained a Writ of Habeas Corpus Ad Prosequendum to secure Defendant's presence for the April 11th hearing. [See ECF No. 49]

On April 11, 2023, Judge Mensah heard the government's motion to revoke Defendant's release. Defendant was present with Mr. Goldfarb and AUSA Dixon represented the government. At the conclusion of the hearing, the Court gave the parties until April 14, 2023, to supplement the record. On April 14, 2023, AUSA Dixon filed a supplemental motion, and on April 16, 2023, Mr. Goldfarb filed Defendant's response in opposition. [See ECF Nos. 53, 55]  Mr. Dixon argued that, if Defendant were not detained, he would likely be deported and would not appear for Court as required and have no incentive to do so.

Mr. Goldfarb's response provided some insight concerning how Defendant went into ICE custody following his bond release hearing. According to that response:

> While processing Defendant for release, the United States Marshal's Office, as required, contacted ICE to verify that no detainer was in place preventing Defendant's release. Upon being contacted, ICE stated that another individual called them after the Pretrial Office and specifically requested a detainer be placed on Defendant to ensure he was not released. Thus, … Defendant … was transferred into [ICE] custody and placed in Kansas while awaiting possible deportation hearings.

3

[ECF No. 55 at 3] Mr. Goldfarb further explained that he contacted ICE to identify the person seeking the detainer/hold, and an "official who was familiar with the situation stated that they never asked for a specific name and believed it was someone within the 'DA's' office." [Id. at 3-4] The parties agree that there is no basis before the Court to conclude that AUSA Dixon or anyone else in the United States Attorney's Office for our District requested the ICE detainer.

In his response to the government's motion to revoke release, Mr. Goldfarb argued that the question of whether Defendant should be detained should be considered without concern for whether the executive branch might nonetheless remove him if he were released, noting that an ICE detainer is not dispositive under the Bail Reform Act on the issue of whether a particular defendant should be detained or released.  [See ECF No. 55 at 6-7]  Therefore, per Defendant, because there was no reason to believe that Defendant was a flight risk, and because the government could ask that Defendant not be deported, the government's motion to revoke bond must be denied.

Judge Mensah agreed with the defense and denied the motion to revoke Defendant's bond. [See ECF No. 65] Judge Mensah correctly observed that the government had failed to satisfy the requirements for bond revocation, see 18 U.S.C. § 3148, because Defendant never had an opportunity to be on release and, therefore, he never violated any conditions of release. Judge Mensah also concluded that the government had not met the standard for reopening the detention hearing pursuant to 18 U.SC. § 3142(f).  Relying on United States v. Villatoro-Ventura, 330 F.Supp.3d 1118 (N.D. Iowa 2018), Judge Mensah "agree[d] with the conclusion that 'a risk of involuntary removal does not establish a serious risk that the defendant will flee upon which pretrial detention may be based.'" [See ECF No. 65 at 5 quoting Villatoro-Ventura, 330 F.Supp.3d

4

at 1133]³ Judge Mensah further agreed with the "suggestion" in Villatoro-Ventura that "ICE has significant discretion concerning the timing of deportation…." [See ECF No. 65 at 5 citing Villatoro-Ventura, 330 F.Supp.3d at 1130-31]

Despite our Court's release order, Defendant remained in ICE custody, and he was removed from the United States to Honduras on June 1, 2023.

On October 9, 2023, Mr. Goldfarb filed the instant Motion to Dismiss the Indictment against Defendant with prejudice. [ECF Nos. 90, 91] On November 6, 2023, the government filed its response, asking the Court for leave to dismiss the charges against Defendant without prejudice. [ECF No. 100] On November 22, 2023, the undersigned heard oral argument from the attorneys. The matter is ready for decision.

**DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION**

**I.   Summary of Arguments**

Broadly speaking, Defendant contends that the Executive Branch of United States Government opted to remove Defendant to Honduras which reflects "a calculated decision not to prosecute him." [ECF No. 90 at 3] Defendant argues that the government had the ability to keep Defendant available for prosecution but failed to do so. Defendant agrees that there is no reason in the record to believe that Defendant's removal was initiated at the behest of the United States Attorney's Office for the Eastern District of Missouri. But the removal, which was conducted by the Executive Branch, reflects "outrageous governmental misconduct that results in a due process

---

³ Villatoro-Ventura is somewhat distinguishable from our case because Villatoro-Ventura addressed the threshold question of whether the government was authorized to seek detention under the Bail Reform Act, 18 U.S.C. § 3142(f). See 330 F.Supp.3d at 1135. The court in that case held that the government failed to show it was authorized to seek detention because it had not shown a serious risk of flight. In our case, there is no dispute that the government was authorized to seek detention—a presumption favoring detention applied because Defendant was charged with serious drug trafficking crimes. See 18 U.S.C. § 3142(f)(1)(C).

violation [which] warrants dismissal" of the Indictment against Defendant.  [Id. citing United States v. Hoffman, 2006 U.S. Dist. LEXIS 66747 (N.D. Iowa 2006)]  At oral argument, Defendant asked the Court to consider that the government had demonstrated its ability to influence the proceedings by procuring Defendant's appearance for the bond revocation hearing, but the government did nothing further to stop the removal.  Defendant believes that the government's conduct in this case is "'so grossly shocking and so outrageous as to violate the universal sense of justice.'"  [Id. quoting United States v. Restrepo, 930 F.2d 705, 712 (9th Cir. 1991)]  Finally, Defendant argues that any dismissal must be with prejudice because a dismissal without prejudice would allow the government to proceed in similar cases without making a choice between removal and prosecution.

The government agrees that the Indictment should be dismissed with respect to this Defendant, but it believes any dismissal should be without prejudice.  The government relies on its efforts to have Defendant detained pending trial, and it contends that Defendant has not shown any calculated or outrageous misconduct by the government.  At oral argument the government asked the Court to consider that it had no incentive to remove Defendant prior to completing the prosecution.

## II. Discussion

The parties have not identified a reported case that is directly on point.  There is, however, case authority supplying the legal standards for addressing Defendant's outrageous government conduct claim.

Eighth Circuit caselaw "recognize[s] the defense of outrageous government conduct." United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (citations omitted); see also United States v. Bugh, 701 F.3d 888, 894 (8th Cir.), cert. denied, 569 U.S. 953 (2012).  But "[o]utrageous

6

Government conduct requires dismissal of a charge 'only if it falls within the narrow band of the most intolerable government conduct.'" Bugh, 701 F.3d at 894 (quoting United States v. Morse, 613 F.3d 787, 792-93 (8th Cir. 2010)). "The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." Hunt, 171 F.3d at 1195 (citations and internal quotations omitted). The Eighth Circuit has commented that there are few reported cases finding the "government's conduct so outrageous as to violate due process." United States v. Combs, 827 F.3d 790, 795 (8th Cir. 2016) (identifying only two reported court of appeals decisions). "Whether particular government conduct [is] sufficiently outrageous to meet [the] standard is a question of law…." United States v. Boone, 437 F.3d 829, 841 (8th Cir. 2006).

Applying the foregoing principles, the undersigned finds that Defendant has not shown that the government engaged in the sort of outrageous or intolerable conduct that would shock the Court's conscience. There is no reason to conclude that AUSA Dixon or anyone else in the United States Attorney's Office for our District sought to take advantage of the removal process. The undersigned agrees that the United States Attorney's Office had no motive to remove Defendant prior to completing the prosecution. To the contrary, the Assistant United States Attorney made the Court aware of the risk of removal and asked our Court to detain Defendant to ensure his appearance.[4] Hence, our Court should not accept Defendant's contention that the Executive Branch should be deemed to have made a calculated decision not to prosecute him.

---

[4] To be sure, Chief Judge Mensah was acting well within the law when she determined that the presence of an ICE detainer does not mandate a finding of a risk of non-appearance. See, e.g., Villatoro-Ventura, 330 F.Supp.3d at 1136-37. And her decisions not to revoke Defendant's bond or reopen the detention hearing were reasonable. But the Assistant United States Attorney also acted reasonably, not outrageously, when he took steps to have our Court revisit the issue of Defendant's pretrial release and secure Defendant's presence through trial.

Defendant also argues that the Assistant United States Attorney could have taken steps to ensure Defendant remained available for trial despite the removal order. In support, he notes that the government applied for and obtained a Writ of Habeas Corpus Ad Testificandum for the bond revocation hearing. That writ was effective only in a limited sense because the Defendant was in custody in the United States and a hearing was scheduled in our Court; it was not a means to transfer Defendant into the primary custody of the Department of Justice indefinitely despite an order from our Court directing that he be placed on bond. Defendant has not identified any means, short of pretrial detention, that the Assistant United States Attorney should have employed in this case to secure Defendant's presence. That is not to say that no such means exist. The court in Villatoro-Ventura explained that, under ICE regulations, "[a]n alien who is a criminal defendant may be removed only 'with the consent of the appropriate prosecuting authority,' [namely] the [United States Attorney's Office]." 330 F.Supp.3d at 1130 (quoting 8 C.F.R. § 215.3(g)). But the parties herein agree that the United States Attorney's Office was not involved in Defendant's removal decision, and Defendant has not alleged that the prosecution consented to his removal. On the present record, at most, Defendant has made a showing of a bureaucratic inconsistency between two Executive Branch agencies. Rather, the undersigned finds that Defendant has not shown any outrageous nonfeasance by the United States Attorney's Office that would justify dismissing the Indictment against him.

Finally, Defendant has not shown any meaningful prejudice to him in this criminal case resulting from his removal. It is hard to conjure any prejudice other than, perhaps, the opportunity to seek an acquittal on the pending charges. Defendant has not alleged that he was removed due to the instant charges—it is apparent from the record that Defendant's eventual removal was all but guaranteed because he had already been ordered removed before the bond revocation hearing.

8

Finally, the government has agreed to dismiss the charges without prejudice. Therefore, to the extent a pending indictment in the United States might impede Defendant's freedom in Honduras or his ability to travel outside of the United States, that impediment would seemingly be removed by granting the relief the government seeks.[5]

In summary, the undersigned finds that Defendant has not shown that the government engaged in any outrageous conduct that would shock the Court's conscience. At best Defendant has shown missteps or inconsistencies between Executive Branch agencies. The undersigned recommends that the Court deny Defendant's motion to dismiss the charges against him with prejudice, and further recommends that the Court grant the government's competing request to dismiss those charges without prejudice.

## RECOMMENDATION

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Court DENY Defendant's Motion to Dismiss [ECF No. 90] the charges against him with prejudice.

**IT IS FURTHER RECOMMENDED** that the Court GRANT the government's request [ECF No. 100] and dismiss the charges against this Defendant without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek review of this Report and Recommendation before a United States District Judge. The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990). See also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

---

[5] Defendant has not offered herein any challenge(s) to the basis or reasons for his removal.

This matter will be set for trial by further order of the court, before the Honorable Ronnie L. White, United States District Judge.

_____
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  18th  day of  December , 2023.